IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

LAMON K. GRIGGS                                                                                PLAINTIFF

V.                                                            CIVIL ACTION NO.: 1:16CV13-SA-RP

CHICKASAW COUNTY, MISSISSIPPI                                                     DEFENDANT

MEMORANDUM OPINION

Presently before the Court is Defendant Chickasaw County's Motion for Summary Judgment [46]. Plaintiff has responded [50], and Defendant replied [51]. Therefore, this motion is ripe for review.

*Background and Procedural History*

Griggs served as Chickasaw County's Solid Waste Enforcement Officer beginning in 2000. As part of his duties, Griggs applied for grants each year on Chickasaw County's behalf, including a competitive grant, a noncompetitive grant, and a tire-recycling grant. At least fifty percent of his salary was paid from the competitive grants. Though Griggs wrote the grants and submitted them to the Mississippi Department of Environmental Quality ("MDEQ"), he was not involved in the remainder of the process. MDEQ notified the County's Chancery Clerk when and if the grants were approved. The Chancery Clerk would then take the grant approval to the Board of Supervisors who would execute it, and then send it back to MDEQ headquarters in Jackson, Mississippi.

Griggs successfully received required funding from the grants until 2014. According to MDEQ representative Mark Williams, MDEQ did not disperse any funds to Chickasaw County in 2014, as the Grant applications made in September 2014 were somehow lost. Though Griggs was able to obtain the noncompetitive grant funds in 2015, he was unsuccessful as to the competitive grant that year. According to Griggs, the MDEQ employee who previously handled

Chickasaw County's grants retired in June 2015. Griggs posits that the competitive grant application may have been lost in the office shuffle, or perhaps it had been lost in the mail.

On September 22, 2015, Griggs was called into the Board of Supervisors meeting to discuss the unsecured grant funds. He brought with him copies of the submitted grant applications, and he explained that he did not know about the money or why the County did not receive funding that year. In any event, citing the lack of funding resulting from grant deficit, the Chickasaw County Board of Supervisors voted unanimously to eliminate Griggs' position as Solid Waste Enforcement Officer. A motion was made to move Griggs into the position of bailiff, where he was paid $75.00 per day. Griggs did not appeal the decision eliminating his position, but stayed on as bailiff until the end of the Board's term, December 31, 2015.

Griggs filed the instant lawsuit alleging that the position of Chickasaw County Solid Waste Enforcement Officer was eliminated in violation of his First Amendment rights. Concurrent to the preceding facts, Griggs ran for Sheriff of Chickasaw County as an independent candidate in 2015. However, according to Griggs, several board members publicly supported Chief Deputy James Meyers, the democratic candidate for the position. In late summer 2015, Griggs began to hear rumors that board members wanted him to pull out of the Sheriff race. After his demotion from waste enforcement, Griggs lost the Sheriff's election. When Meyers became Sheriff, Griggs's position as bailiff was not renewed, ending his career with the County.

Following the September 22, 2015 Board meeting, Griggs applied for and received unemployment benefits with the Mississippi Employment Security Commission ("MESC"). Griggs premised his application for benefits upon the qualifying reason of "laid off/lack of work." Upon realizing that competitive grants would not be awarded unless they hired a new

2

solid waste officer, the county eventually designated Howard Woodard as the Solid Waste Enforcement Officer and Griggs's replacement.

*Analysis and Discussion*

Defendant moves for summary judgment, arguing several bases. The Court first addresses Defendant's arguments as to claim, issue, and procedural preclusion, and the subsequent section will address the merits of Plaintiff's First Amendment claim.

Defendant first and primarily argues that Plaintiff is precluded from bringing his Section 1983 claims in this Court. Defendant argues that the Court cannot entertain Plaintiff's claims because Plaintiff failed to appeal the Board's termination decision, as, in Defendant's opinion, is mandated by Mississippi statute. *See* MISS. CODE ANN. §11-51-75. As an alternative to this argument, Defendant argues that Plaintiff is barred because the Board's decision constitutes a final administrative decision negating the federal court's ability to hear Plaintiff's claims. Next, Defendant argues that Plaintiff is barred from pursuing his claim in federal court because of the *Rooker-Feldman* Doctrine. Defendant next argues that Plaintiff is judicially estopped from claiming that the Board's termination decision was a political patronage dismissal because, when applying for benefits, Plaintiff reported to the MESC that he had been laid off.

*Procedural Preclusion*

A. Bill of Exceptions

Mississippi's Bill of Exceptions statute provides that:

Any person aggrieved by a judgment or decision of the Board of Supervisors, or municipal authorities of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the Board of Supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the Board of Supervisors or of the municipal authorities. The clerk thereof shall transmit the bill of exceptions to the circuit court at once, and the court shall either in term or in vacation hear and determine

3

>the same on the case as presented by the bill of exceptions as an appellate court, and shall affirm or reverse the judgment . . . .

Miss. Code. Ann. § 11-51-75. Defendant argues that because Plaintiff did not perfect an appeal within the statutory constraints of Section 11-51-75, his action is untimely. Furthermore, Defendant argues that Section 11-51-75 was Plaintiff's exclusive remedy, and that failure to appeal under the statute results in a final judgment. Citing the Full Faith and Credit Clause, or Title 28 U.S.C. 1738, Defendant argues that preclusive effect should be given to the Board's decision, because Mississippi state court would do so, even for Section 1983 claims. As an extension of Defendant's Bill of Exceptions argument, Defendant posits that Plaintiff is precluded by collateral estoppel principles from filing suit due to the finality of the Board's decision, as a state administrative agency.

The Full Faith and Credit Statute, 28 U.S.C. § 1738, generally requires "federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980) (issue preclusion); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 85, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984) (claim preclusion). Under Mississippi law, four elements are required for collateral estoppel, or issue preclusion, to apply. "The party must be seeking to re-litigate a certain issue, that issue must already have been litigated in a prior action, the issue must have been determined in the prior suit, and the determination of the issue must have been essential to the prior action." *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997) (citing *Raju v. Rhodes*, 7 F.3d 1210, 1215 (5th Cir. 1993), *cert. denied*, 511 U.S. 1032, 114 S. Ct. 1543, 128 L. Ed. 2d 194 (1994)). Defendant argues that Mississippi state court would consider Plaintiff's claims procedurally barred because he failed to file a Bill of Exceptions.

Though Defendant has not provided, and the Court has not obtained elsewhere, Fifth Circuit law specifically determining whether Section 11-51-75, and by extension Section 1738, bars Plaintiff's Section 1983 claim in federal court, the Court finds guidance in dicta from the Supreme Court. In *Haring v. Prosise*, 462 U.S. 306, 313, 103 S. Ct. 2368, 76 L. Ed. 2d 595 (1983), the Supreme Court reviewed the principles governing whether a Section 1983 claimant would be collaterally estopped from litigating an issue on the basis of a prior state-court judgment. The Court noted:

> In federal actions, including § 1983 actions, a state-court judgment will not be given collateral estoppel effect, however, where "the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Id.*, at 101, 101 S. Ct., at 418. Moreover, additional exceptions to collateral estoppel may be warranted in § 1983 actions in light of the "understanding of § 1983" that "the federal courts could step in where the state courts were unable or unwilling to protect federal rights."

*Haring*, 462 U.S. at 313-14, 103 S. Ct. 2368 (citing *Allen*, 449 U.S. at 101, 101 S. Ct. 411). *See also Board of Regents v. Tomanio,* 446 U.S. 478, 485, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980) (42 U.S.C. § 1988 authorizes federal courts, in an action under § 1983, to disregard an otherwise applicable state rule of law if the state law is inconsistent with the federal policy underlying § 1983). Therefore, even though Defendant's argument may have some traction regarding state procedural law, the elements of collateral estoppel cannot be satisfied because Plaintiff is not attempting to "re-litigate" his claims, and there is no state court action wherein Plaintiff was provided with a full and fair opportunity to litigate his First Amendment specific claim.

For the bar of *res judicata*, or claim preclusion, to apply in Mississippi there are four identities which must be present: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made. *Quinn v. Estate of Jones*, 818 So. 2d

1148, 1151 (Miss. 2002); *Dunaway v. W.H. Hopper & Assocs., Inc.*, 422 So. 2d 749, 751 (Miss. 1982). The Mississippi Supreme Court has held that the absence of any one of the elements is fatal to the defense of *res judicata*. *Estate of Anderson v. Deposit Guar. Nat'l Bank*, 674 So. 2d 1254, 1256 (Miss. 1996).

The Court notes that Plaintiff was not terminated, initially. He was effectively transferred to a different position within the County. Therefore, the Board's decision was not a definitive, final decision of termination. Had Plaintiff appealed the Board's decision to transfer him within ten days, he would have had opportunity to protest only the issue of his transfer, not his eventual termination. Therefore, the first "identity" under the *res judicata* standard is not present—the subject matter of Plaintiff's claim. Courts have routinely allowed plaintiffs to seek relief for Constitutional violations rather than appealing Board decisions, because the two matters are categorically different. *See Pearson v. City of Louisville*, No. 1:06CV321-SA-JAD, 2008 WL 4814051, at *4 (N.D. Miss. Nov. 4, 2008) ("Plaintiff here is not seeking to overturn the decision to condemn his property or destroy his property, he is asserting his right to constitutional protections. Therefore, Plaintiff's failure to file his notice of appeal and bill of exceptions is not dispositive in this case"). Furthermore, many of the statements giving rise to Plaintiff's claim did not arise until well after the ten days had passed. Therefore, Plaintiff's claims are not barred under Mississippi *res judicata* rules.

Finally, the Court is concerned that a Board could hide behind such a transfer to escape liability for First Amendment retaliation by transferring plaintiffs who are unaware that another actor with the same intent will terminate them eventually. It is the nature of Plaintiff's claim, as a First Amendment claim, that brings him out of the constraints of procedural preclusion. *See Connick v. Myers*, 461 U.S. 138, 145, 103 S. Ct. 1684, 75 L. Ed.2d 708 (1983) ("Speech on

public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection"). Accordingly, Plaintiff's claims are not precluded by Section 1738.

B. Federal Common Law Preclusion

Defendant argues that even if Plaintiff's claims are not barred under Section 1738, they are barred under *University of Tennessee v. Elliott*, because the Board constitutes a state administrative agency whose decision is final. *University of Tenn. v. Elliott*, 478 U.S. 788, 794, 106 S. Ct. 3220, 3223-24, 92 L. Ed. 2d 635 (1986). While Section 1738 covers only prior judgments of state *courts;* it does not apply to prior state administrative decisions that have not been judicially reviewed by state courts. *Elliott*, 478 U.S. at 799, 106 S. Ct. 3220. The Fifth Circuit has implied that federal rules of claim preclusion apply to determine whether Section 1983 claims are barred from litigation in federal court by the outcome of prior unreviewed state administrative adjudications. *Frazier v. King*, 873 F.2d 820, 823-25 (5th Cir.1989); *See also*, *Hitt v. Connell*, 301 F.3d 240, 247 (5th Cir. 2002). Accordingly, though not barred by Section 1738, a plaintiff's claims may be barred under federal common law preclusion pursuant to *Elliott*.

In *Elliott*, the Plaintiff brought allegations of employment discrimination in federal court during pendency of his administrative appeal. *Id.*, 106 S. Ct. 3220. As part of his administrative proceedings, the plaintiff received a hearing in front of an administrative law judge, who determined that the plaintiff had not suffered racial discrimination. The plaintiff did not seek review of the administrative agency's decision in state court. Instead, he pursued his previously initiated Title VII and Section 1983 claims in the federal forum. The Supreme Court held that when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts in actions under

7

the Reconstruction Civil Rights[1] statutes must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts. *Id*.

Defendant has not directed the Court to specific findings of fact made by the Board, other than the fact that Plaintiff was terminated, relevant to the First Amendment inquiry. Furthermore, Plaintiff has not actually litigated his claim. Due Process requires that parties have a fair and full opportunity to litigate, and agencies must be acting in a quasi-judicial capacity in order for the proceeding to be considered preclusive. *United States v. Utah Const. & Min. Co*., 384 U.S. 394, 422, 86 S. Ct. 1545, 16 L. Ed. 2d 642 (1966). This "judicial capacity" element envisions an impartial tribunal. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1052 (5th Cir. 1997) ("The basic requirement of constitutional due process is a **fair and impartial tribunal**, whether at the hands of a court, **an administrative agency** or a government hearing officer"). *See also Gibson v. Berryhill*, 411 U.S. 564, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973). Plaintiff did not receive a hearing before an impartial tribunal, and therefore, this case is not analogous to *Elliot*. Accordingly, Plaintiff's claims are not barred by federal common law preclusion rules.

C. *Rooker-Feldman*

Defendant next argues that Plaintiff is barred by the *Rooker-Feldman* doctrine, which bars a district court from exercising subject matter jurisdiction over appeals of final orders of state courts. However, "the *Rooker–Feldman* doctrine only applies insofar as a state court judgment merits full faith and credit." *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004). As the Court has previously determined, the Board's termination decision does not warrant full faith and credit under 28 U.S.C 1738. Therefore, this doctrine does not bar Plaintiff's First Amendment claim.

---

[1] This decision did not preclude claims under Title VII.

D. Judicial Estoppel

Defendant argues that Plaintiff is judicially estopped from claiming the Board order was a political patronage dismissal because he reported to the MESC that he was applying for benefits because of "lack of work/laid off." Judicial estoppel precludes a "party from assuming inconsistent positions in litigation." *In re Superior Crewboats Inc.*, 374 F.3d 330, 334 (5th Cir. 2004) (citation omitted). Judicial estoppel requires that: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Phillips v. City of Dallas*, 781 F.3d 772, 783 (5th Cir. 2015) (quoting *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011)).

Plaintiff explains that the MESC benefits application provided boilerplate options that could be marked with a check to explain why he left his job. Of all of the given choices, Plaintiff felt that the box entitled "I was laid off" was most fitting to his situation. Therefore, in essence, Plaintiff argues that he made his prior asserted legal position inadvertently.

Indeed, factual findings of the Mississippi Employment Security Commission have a preclusive effect on later claims for wrongful termination. *Cox v. DeSoto County, Miss.*, 564 F.3d 745 (5th Cir. 2009). However, Defendant has not directed the Court to specific factual findings made by MESC that would preclude Plaintiff's claims. MESC did not inquire into whether Plaintiff engaged in protected speech, but only whether Plaintiff was entitled to unemployment benefits. Therefore, even considering MESC's potential findings, genuine issues of material fact remain on Plaintiff's claim, as addressed below.

9

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The Rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when ... both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

A. First Amendment Claims

Plaintiff alleges that he was discharged in violation of his First Amendment rights because he campaigned for Sheriff against a candidate preferred by members of the Board of Supervisors. Conversely, Defendant argues that Plaintiff has not produced credible evidence that the Board eliminated his position because Plaintiff was running for Sheriff. Next, Defendant argues that even if Plaintiff was dismissed for political reasons, his discharge was protected because Plaintiff was a policy maker.[2]

Public employees do not necessarily shed their First Amendment rights of speech and political association in exchange for their jobs, but they often must make adjustments. *Branti v. Finkel*, 445 U.S. 507, 518, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980); *see also Rutan v. Republican Party*, 497 U.S. 62, 110 S. Ct. 2729, 111 L. Ed. 2d 52 (1990); *Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).

The Plaintiff must satisfy four elements to recover for a First Amendment retaliation claim. First, the Plaintiff must suffer an adverse employment decision. *See Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). Second, the Plaintiff's speech must involve a matter of public concern. *See Thompson v. City of Starkville*, 901 F.2d 456, 460 (5th Cir. 1990) (citing *Connick*, 461 U.S. at 147, 103 S. Ct. 1684). Third, the Plaintiff's interest in commenting on matters of public concern must outweigh the Defendants' interest in promoting efficiency. *Id.* (citing *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed.2d 811 (1968)). Fourth, the Plaintiff's speech must have motivated the Defendants' action. *Id.* (citing *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)).

---

[2] Neither Plaintiff nor Defendant has produced arguments regarding the requirement that an official policy be implemented (whether by the single action of a municipal official possessing final policymaking authority or not) in order for municipal liability to arise under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Therefore, for summary judgment purposes, the Court has considered this avenue for defense waived.

11

Once a plaintiff has met his burden of showing that his protected speech was a substantial or motivating factor in the defendant's adverse employment decision, a defendant may still avoid liability by showing, by a preponderance of the evidence, that it would have taken the same adverse employment action even in the absence of the protected speech. *Haverda v. Hays Cty.*, 723 F.3d 586, 591-92 (5th Cir. 2013) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287, 97 S. Ct. 568). However, an employee can refute that showing by presenting evidence that "his employer's ostensible explanation for the discharge is merely pretextual." *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991).

It is undisputed that Plaintiff suffered two adverse employment actions: first, his demotion from solid waste enforcement, and second, his termination from his employment as bailiff. However, Defendant argues that the Board cannot be held responsible for the actions that took place after they demoted him. Further, Plaintiff ran for Sheriff, which constitutes engagement in speech on a matter of public concern. *Phillips*, 781 F.3d at 778. *See also United States v. Tonry*, 605 F.2d 144, 150 (5th Cir. 1979) ("There is no question that candidacy for office and participating in political activities are forms of expression protected by the first amendment") (citations omitted)), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).

However, Defendant contests whether Plaintiff's interests in running for Sheriff outweigh the Defendant's interest in promoting efficiency. Alternatively, Defendant argues that Plaintiff has not produced credible evidence showing that Plaintiff's candidacy motivated the Board's decision for termination.

The Court applies a balancing test to determine whether an employee's interest in commenting upon matters of public concern outweighs the State's interest in promoting efficient

12

delivery of public services. *Pickering*, 391 U.S. at 568, 88 S. Ct. 1731. The balancing test considers, *inter alia*, the political sensitivity of the employment, the nature and content of the employee's speech or political activity, the extent of public concern implicated by the speech, and whether close confidential working relations with elected officials are necessary. The Fifth Circuit places cases involving only political association, only speech, or a combination of the two on a spectrum. *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 993-94 (5th Cir. 1992) (en banc) (citing *McBee v. Jim Hogg County*, 730 F.2d 1009, 1014 (5th Cir. 1984)).

Where non-policymaking, non-confidential employees are discharged solely because of their private political views, little, if any, weighing of an employee's First Amendment rights against an employer's right to loyal service is necessary, and the employee's rights generally prevail. *Id.* Where a public employee occupies a confidential or policymaking role, the employer's interests more easily outweigh the employee's First Amendment rights, placing such cases on the opposite end of the spectrum. *Kensey*, 950 F.3d at 994*; Gentry v. Lowndes Cty.*, *Miss.*, 337 F.3d 481, 486 (5th Cir. 2003).

Defendant argues that Plaintiff held a policy-maker position as Solid Waste Enforcement Officer. As evidence of this, Defendant cites Plaintiff's ability to determine whom to ticket for illegal dumping, the fact that he traveled and monitored 571 miles of county roads looking for illegal dumping, and the fact that Plaintiff considered himself "on call" twenty-four hours a day, seven days a week. Defendant compares Plaintiff's role to that of the County Road Manager and the County Administrator from *Gentry*, arguing that their roles are similar policy maker roles. *Gentry*, 337 F.3d at 486. Even though Defendant alleges that the Solid Waste Enforcement Officer is given broad power to "prepare his own budget and run his program," he was required to report to the road manager, not the Board or the Sheriff, and after applying for grants, he was

13

not involved in the remainder of the funding process. This logically places Plaintiff in a less confidential role than the road manager in *Gentry*. Accordingly, Defendant has failed to produce evidence tending to show that Plaintiff held a policy maker role.

Therefore, Plaintiff's position placed him nearer to the opposite end of the spectrum. *See Pickering*, 391 U.S. 565, 88 S. Ct. 1731 (holding that a teacher's First Amendment rights were violated when the Board of Education dismissed him for sending a letter to newspaper criticizing a proposed tax increase); *see also Garcetti v. Ceballos*, 547 U.S. 410, 419, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006) ("The Court has acknowledged the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion"); *Jordan v. Ector Cnty.*, 516 F.3d 290, 295 (5th Cir. 2008) (recognizing that the First Amendment forbids government officials to discharge public employees for not being supporters of the political party in power). For these reasons, the Court concludes that Plaintiff was speaking as a non-policymaking, non-confidential citizen. *See Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir.2001) (citing *Connick*, 461 U.S. at 147–48 n. 7, 103 S. Ct. 1684) (the first two elements two through four are questions of law that must be resolved by the Court). His attempt to run for Sheriff and refusal to support the democratic candidate, James Meyers, constitutes protected speech under the First Amendment.

  B.  Evidence of Causation

Next, Plaintiff must satisfy the fourth element of his claim by presenting evidence that his speech motivated the Defendant's action. Defendant argues that Plaintiff's claims are barred because he cannot produce credible evidence that the Board terminated him because of his political speech. Defendant argues that Plaintiff's exclusive mechanism for challenging the Board's minutes was by filing a Bill of Exceptions through Section 11-51-75. Further, without

such challenge to the minutes under the Bill of Exceptions statute, Defendant argues that the minutes are the exclusive record of what the Board's rationale was regarding the subject employment decision. Additionally, the Defendant argues that the Board did not officially terminate Plaintiff from his position as bailiff, and therefore, his argument fails to establish causation for the second adverse employment action.

Conversely, Plaintiff argues that though he had an unblemished record of fifteen years of service, he was terminated the year that he ran for Sheriff. As further evidence of such motivation, Plaintiff points to comments made by Supervisor McFarland to him, wherein McFarland asked him if he was going to withdraw from the race, and that the Board thought he "ought to pull out and let Meyers have it." Also, McFarland reported to Plaintiff that Supervisor King was "after him."

During the board meeting on September 22, 2015, Supervisor Russel Brooks purportedly asked whether Plaintiff had violated the Hatch Act[3] when he ran for Sheriff. When Plaintiff asked Brooks why he was referring to the Hatch Act, Supervisor Hall responded, "you don't want to open that door." Plaintiff recalls that Supervisor King told him "these dang politics are something else" and that he thought the termination was due to political favoritism. Next, during the fall of 2015, Meyers purportedly told Plaintiff that he would fire anyone who had run against him for Sheriff, and that he would "make it a point that if I'm elected, I'll make sure their law enforcement careers are over with." Plaintiff was terminated from his position as bailiff just after Meyers took office.

---

[3] The Hatch Act forbids certain political activities of federal employees, notably taking "any active part in political management or in political campaigns. Until recently, the Hatch Act also applied to state and local employees whose positions were paid for even in part by federal funds. *Phillips*, 781 F.3d at 776. *See also* S. Rep. No. 112–211, at 3–5 (2012), 2012 U.S.C.C.A.N. 750, 752–55. Now, state employees' salary must be paid entirely from federal funding in order to be covered under the act. Defendants have not formally asserted argument that Plaintiff was covered by the Hatch Act in this matter.

Defendant counters that Meyers' statements should be excluded as hearsay, because when they were made, he was not speaking for the County or on behalf of the County. Accordingly, Defendant argues that the statements do not fall into the "Opposing Party Statement" exception to the hearsay rules. *See* FED. R. EVID. 801(d)(2)(D). However, Meyers attended as the representative of the Sheriff's Department in Sheriff Simmons absence during the September 22, meeting wherein Plaintiff was terminated. Therefore, Plaintiff argues that Myers statements fall into the same hearsay exception, and that they demonstrate his "state of mind" and are admissible under Federal Rule of Evidence 803(3), as well.

Even without Meyers' statements, Plaintiff's other circumstantial evidence, including McFarland's comments, creates a genuine issue of material fact as to the reasons that the Board removed him from his position as Solid Waste Enforcement Officer. Defendant has countered that it would have made the same employment decision even in the absence of the protected speech, because the funds were not present to pay Plaintiff's salary. *Haverda*, 723 F.3d at 591-92 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287, 97 S. Ct. 568). Furthermore, Defendant attempts to separate the Board's motive from the Sheriff's comments. However, Plaintiff responds that County Defendants terminated him from the bailiff position instead of rehiring him in order to obtain the funding. Instead, the Board replaced Plaintiff with another employee.

"Summary judgment should be used 'most sparingly in . . . First Amendment case[s] . . . involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities.'" *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998) (quoting *Porter v. Califano*, 592 F.2d 770, 778 (5th Cir.1979)); *see also Click v. Copeland*, 970

16

F.2d 106, 113-14 (5th Cir. 1992) ("Summary disposition of the causation issue in First Amendment retaliation claims is generally inappropriate").

Courts deciding the causation issue by summary disposition have generally done so only when the employer's reasons have not been controverted. *Pierce v. Texas Dep't of Criminal Justice, Institutional Div*., 37 F.3d 1146, 1150 (5th Cir. 1994) (holding that the plaintiff did not present evidence of retaliation and, therefore, the plaintiff failed to allege facts that would allow a rational jury to conclude that the employer's reasons for termination were pretextual); *see also Beattie v. Madison Cty. Sch. Dist*., 254 F.3d 595, 605 (5th Cir. 2001) (finding that the plaintiff had not offered evidence to rebut the employer's evidence that it would have terminated the plaintiff in the absence of the protected speech and, therefore, summary judgment was proper). Plaintiff has directly contested the Defendant's reasons for termination, and he has pointed to circumstantial evidence showing that the Board may have had motive.

Retaliatory motive may be inferred from a chronology of events, and the inference must simply be "plausible." *Charles v. Woody*, 180 F. App'x 533, 534 (5th Cir. 2006); *see also Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997) (To establish a First Amendment retaliation claim, a plaintiff may "rely upon a chronology of events from which retaliation may plausibly be inferred"). After fifteen years of service, the Board terminated Plaintiff during the same season that he campaigned for Sheriff against Meyers, the candidate that the majority on the Board purportedly preferred. During the September meeting where Plaintiff was terminated, Plaintiff was asked whether he was familiar with the Hatch Act. If the termination had been strictly relevant to missing grant funds, there would have been no need for a discussion of this statute.

17

The chronology of events, combined with the other circumstantial evidence cited above, provides enough support for a reasonable juror to conclude that the Board's stated reason for demoting the Plaintiff was pretextual. Furthermore, Plaintiff has produced evidence which would allow a trier of fact to infer that his termination from the bailiff position was linked to the Board's animosity. Therefore, summary judgment in this issue is premature and must be denied.

*Conclusion*

Defendant's arguments are not well taken. Plaintiff has raised a significant question of material fact as to whether he was terminated because he participated in protected speech when he ran for Sheriff. Therefore, Defendant's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED this the 28th day of July 2019.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE