IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

LAMON K. GRIGGS                                                                              PLAINTIFF

V.                                                        CIVIL ACTION NO.: 1:l6-cv-13-SA-RP

CHICKASAW COUNTY, MISSISSIPPI                                  DEFENDANT

MEMORANDUM OPINION

The present action was tried by a jury, and final judgment was entered in favor of Plaintiff Lamon Griggs on his claims for retaliation in violation of the First Amendment. Plaintiff filed Motion to Alter or Amend Judgment [88], and Defendant filed a Cross-Motion for Judgment as a Matter of Law, or New Trial [90].

*Factual and Procedural Background*

Griggs, a former employee of Chickasaw County, proceeded to trial before a jury against Chickasaw County, alleging that his position as Solid Waste Enforcement Officer was eliminated and that he was subsequently terminated from his position as Bailiff, in violation of his First Amendment rights. At the close of Griggs' case-in-chief, Chickasaw County moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The Court denied the motion, finding that the evidence presented at trial created a factual issue as to whether Chickasaw County retaliated against Griggs for campaigning for Sheriff of Chickasaw County. At the close of arguments, the jury was instructed to determine liability as to the elimination of the Solid Waste Officer Position, as well as his termination from the Bailiff position. Ultimately, the jury returned a verdict in favor of Griggs on both claims and awarded back pay in the amount of $83,447.08.

Following the verdict and award, Chickasaw County filed the present Motion for Judgment as a Matter of Law or, Alternatively, for New Trial, primarily renewing their summary judgment argument that, because Griggs failed to follow Mississippi's Bill of Exceptions procedure, his claims are barred by issue and claim preclusion, judicial estoppel and the *Rooker-Feldman* doctrine. Griggs filed a cross Motion to Alter or Amend the Judgment, arguing that he is entitled to front pay or reinstatement.

I. *Defendant's Rule 50 Motion for Judgment as a Matter of Law*

Federal Rule of Civil Procedure 50(b) allows a defendant to file a renewed motion for judgment as a matter of law following a verdict for the plaintiff. Judgment as a matter of law is warranted under Rule 50 if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have had a legally sufficient evidentiary basis to find for the party on that issue[.]" FED. R. CIV. P. 50(a)(1). The standard under Rule 50 "mirrors" the standard for summary judgment under Rule 56 "such that the inquiry under each is the same." *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (internal quotation and citation omitted). When ruling on a Rule 50 motion, the Court must "view the trial evidence in the light most favorable to the nonmovant, making all reasonable and factual inferences and credibility assessments in the nonmovant's favor." *Illinois Cent. R.R. Co. v. Guy*, 682 F.3d 381, 393 (5th Cir. 2012). The Court must uphold the verdict unless "the facts and inferences point 'so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Flowers v. S. Reg'l Physical Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322 (5th Cir. 1994)).

In its motion, Defendant re-urges many of the arguments presented at the summary judgment phase, including that Plaintiff's claims were procedurally barred or precluded, and that Plaintiff failed to present sufficient evidence to establish that his First Amendment rights were violated. Because the Court extensively addressed Defendant's procedure and preclusion arguments at the summary judgment phase, it here focuses on the factual disputes presented at trial, and whether the facts point "so strongly and overwhelmingly" in the Defendant's favor that reasonable jurors could not reach a contrary conclusion. *Flowers*, 247 F.3d at 235.

At trial, many of the same factual issues persisted that were apparent during the pretrial motion phase. For example, at least fifty percent of Griggs' salary was paid from competitive grants for which he applied on the County's behalf. However, when the County failed to obtain the competitive grant, the County terminated him. Griggs argued to the jury that he was terminated because he ran for Sheriff of Chickasaw County as an independent candidate.

According to Griggs, several board members publicly supported Chief Deputy James Meyers, the democratic candidate for the position, and began spreading rumors about him to disrupt his campaign. For example, Plaintiff called Susan Owings to the stand, who testified that Russell Brooks, a Chickasaw County supervisor, stopped her in a parking lot in order to tell her that Griggs had been "taking money" from the County's coffer. Conversely, Supervisor Brooks testified that Owings stopped *him* in the parking lot in order to accost him regarding Griggs.

Furthermore, Plaintiff's attorney attempted to undermine Defendant's explanation for Griggs' discharge by questioning Supervisor Brooks and Supervisor Jerry Hall about the September 22, 2015 board meeting, wherein the Board voted to eliminate the Solid Waste Enforcement position. Supervisor Brooks testified that even though he asked Griggs about the

Hatch Act[1] immediately before his dismissal, Griggs' termination had nothing to do with politics. Plaintiff's attorney also asked Supervisor Hall whether he was aware during the meeting that a local nursing home had not been paying rent to the city for quite a while. Plaintiff's attorney argued that, had there really been a budgetary shortfall, the County would not have allowed potential income to be overlooked. Griggs further testified as to the disruptions in his campaign for Sheriff, the effect that the terminations had on him, and his inability to find other employment.

"Weighing the conflicting evidence and the inferences to be drawn from that evidence, and determining the relative credibility of the witnesses, are the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict." *Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1297 (5th Cir. 1988). The jury considered all of the evidence and concluded that Griggs' running for sheriff was a motivating factor in his termination from the position in Solid Waste Enforcement and that of Bailiff, and the Court finds this verdict to be reasonable based on the evidence presented at trial. Thus, the Court may not disturb the jury's sound findings. *Reeves*, 530 U.S. at 150, 120 S. Ct. 2097.

## II. Defendant's Rule 59 Motion for New Trial

Alternatively, Defendant moves for a new trial. Federal Rule of Civil Procedure 59 provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). Grounds for a new trial, while "undefined by the Rule" include situations where "the district court finds the verdict is against the weight of the

---

[1] The Hatch Act forbids certain federal employees from taking "any active part in political management or in political campaigns." *Phillips v. City Dallas*, 781 F.3d 772, 776 (5th Cir. 2015).

4

evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Weckesser v. Chi. Bridge & Iron, L.G.*, 447 F. App'x 526, 529 (5th Cir. 2011) (quoting *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985)). Furthermore, a Rule 59 motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

The Court finds no evidence requiring a new trial, for the verdict is not against the weight of the evidence, as stated, *supra*, the damages are not excessive, and there was no unfairness or prejudicial error.

### III. Plaintiff's Motions to Alter or Amend the Judgment

The Plaintiff's motion seeks relief under Rule 59(e) of the Federal Rules of Civil Procedure. "A Rule 59(e) motion calls into question the correctness of a judgment." *Templet v. Hydrochem. Inc.*, 367 F.3d 473, 478 (5th Cir. 2004). There are three grounds for altering or amending a judgment under Rule 59(e): "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *Williamson Pounders Architects, P.C. v. Tunica County*, 681 F. Supp. 2d 766, 767 (N.D. Miss. 2008). Rule 59(e) motions are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment," *Templet*, 367 F.3d at 478, and they "should not be used to. . . re-urge matters that have already been advanced by a party." *Nationalist Movement v. Town of Jena*, 321 F. App'x 359, 364 (5th Cir. 2009). Indeed, it is "an extraordinary remedy that should be used

sparingly." *Id.* Here, Plaintiff asks the Court to alter the judgment to award reinstatement or front pay.

Reinstatement is normally "an integral part of the remedy for a discharge which contravenes the first amendment." *Bueno v. City of Donna*, 714 F.2d 484, 495 (5th Cir. 1983) (citing *Clary v. Irvin*, 501 F. Supp. 706, 713 (E. D. Tex. 1980). However, reinstatement to a former position is inappropriate if that position no longer exists, or when a comparable position is not available. *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 257 (5th Cir. 1996); *Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1255 (5th Cir. 1995). In certain cases, front pay provides the appropriate equitable remedy for "damage that the plaintiff will continue to suffer after the date of final judgment as a result of the [defendant's] wrongdoing." *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 490–91 (5th Cir. 2007). The court should articulate its reasons for finding reinstatement to be infeasible if it finds that front pay is the correct remedy. *Palasota*, 499 F.3d at 489.

Though reinstatement may not be denied solely on the ground that it would revive old antagonisms, *Bueno*, 714 F.2d at 495, front pay may be necessary where "discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy." *Goldstein v. Manhattan Indus.*, 758 F.2d 1435, 1448-49 (5th Cir. 1985). In deciding the amount of a front pay award the court should consider such factors as, *inter alia,* "the length of prior employment, the permanency of the position held, the nature of work, the age and physical condition of the employee, etc., and "whether any front pay award is equitably required and, if so, for what period of time such pay should be granted." *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.3d 869, 871 (5th Cir. 1991).

Both Plaintiff and Defendant agree that reinstatement would be inappropriate here. The position Plaintiff formerly held is no longer funded, and the duties of the Solid Waste Enforcement Officer have been transferred to an existing employee who is not paid to perform the related tasks. Furthermore, Defendant maintains that supervisors would not welcome Plaintiff back, as they argue that he made false assertions on MDEQ grant applications. It is clear that such a scenario would not make Plaintiff whole, as the antagonism and disagreement is readily apparent.

Accordingly, the Court must determine whether front pay is reasonable under the facts of the case. Because it is an equitable remedy intended to make up for future lost earnings, front pay awards should take into account earnings in mitigation of damages. *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007); *Walther v. Lone Star Gas Company*, 952 F.2d 119, 127 (5th Cir. 1992). Here, Plaintiff argues that he is entitled to five years of front pay, totaling $201,117.70. Defendant argues that Plaintiff failed to put on proof that he mitigated his damages.

During trial, Plaintiff testified that he had applied for truck driving jobs, and that he had applied to work at the local community college. Additionally, Plaintiff testified that he applied for jobs in security and investigation, at Federal Express, at the United States Postal Service, and at the Federal Court building in Aberdeen, Mississippi. He also testified that there were not many comparable jobs in the Houston area. Defendant counters that Plaintiff put forth very little evidence concerning his efforts to mitigate.

Although the Plaintiff generally must minimize damages, the employer has the burden of proving failure to mitigate. *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1139 (5th Cir. 1988). Employers may meet this burden by demonstrating that substantially equivalent work was available and that the claimant did not exercise reasonable diligence to obtain it. *Id.* However, "if

an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially equivalent employment." *Id*; *see also Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990). Such is not the case here. Defendant has not met its burden, because there is no evidence that substantially equivalent work was available, or that the employee did not make reasonable efforts to obtain work. Indeed, Defendant highlights Plaintiff's effort to obtain work in its discussion of Plaintiff's post termination contract for employment with the local community college.

Griggs testified in his pretrial deposition that he secured employment in July 2016 with the local community college. He was to be paid a salary of $40,000.00 for teaching law enforcement classes. However, Griggs could not take the job because of health reasons. The program was suspended for one year, and the Court is unaware of the status of this position. Because Griggs' health issues would have likely prevented him from working for the County had he not been wrongfully terminated, the Court cannot find it equitable to assess Chickasaw County for that period of time for which Griggs was unable to work due to incapacitation. Therefore, the Court decreases the requested award by one year's salary.

Defendant next urges the Court to find that Griggs is not entitled to front pay because he would have been terminated for misrepresenting his conduct to the MDEQ. Sheriff Meyers testified that the Chickasaw County Board of Supervisors would have terminated Plaintiff, because he was purportedly untruthful about arrests and convictions for illegal dumping on the MDEQ applications. Plaintiff, on the other hand, testified that he had made arrests, but simply could not recall the names of the individuals. Indeed, Defendant heavily relied on the inconsistency in closing arguments, appealing to the jury:

> Mr. Griggs told DEQ that he had made nine arrests and convictions as solid waste enforcement officer. . . And what did Sheriff Meyers tell you? He told you he

checked. There were no arrests and convictions by Mr. Griggs that year. . . The Court is going to ask you to consider the credibility of the witnesses, Mr. Griggs chief among them, and we would ask that you find that his testimony is simply not credible.

Defendant asks the Court to find that the assertion by Sheriff Meyers constitutes "after acquired evidence," proving that Griggs would have been terminated without the retaliatory motive. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 358, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995). Defendant supplements the argument by attaching affidavits affirming that the supervisors would have terminated Griggs if they had known about the falsities.

The verdict form shows that the jury flatly rejected Defendant's arguments. On the form, the jury was given certain prompts, depending on whether it found for the Plaintiff or the Defendant. Having found for the Plaintiff, the jury was instructed to check a box indicating whether the Defendant proved by a preponderance of the evidence that it would have eliminated the position of solid waste Enforcement Officer regardless of whether Plaintiff ran for Sheriff. The foreperson drew an "x" next to the "no" option. Further, when prompted to write, "We find for the Plaintiff Griggs as to his claim that his position with Solid Waste Enforcement was eliminated in violation of his First Amendment Rights," the foreperson indicated that it was in agreement with this sentiment by drawing a parenthesis around and initialing the words. She also added, "The Defendant did not prove by evidence that it would have eliminated the position whether or not Plaintiff ran for Sheriff." Thus, Defendant has not met its burden of showing that evidence acquired at trial established that Plaintiff Griggs would have been fired without the retaliatory motive.

Next, Defendant argues that Griggs was an at-will employee, and that his position could have been eliminated at any time. However, the fact that a plaintiff's employment is at-will is not

a sufficient basis to deny a motion for front pay. *Julian v. The City of Houston, Texas*, 314 F.3d 721, 739 (5th Cir. 2002).

Regarding the amount of front pay requested, Defendant further argues that, at 63 years old, Griggs cannot show that he would continue to work for five more years. While the Court disagrees that Griggs' age disbars him front the award of front pay entirely, it finds that the award of five years front pay to be too speculative. In determining when the front pay period ends, the Court has considered the length of prior employment, the permanency of the position held, the age and physical condition of the employee, and possible consolidation of the job. *Reneau*, 945 F.2d 869, 871.

The consolidation of Griggs' position, combined with the lack of funding contributed to that position by the MDEQ, creates significant questions as to the permanency of Griggs' position with the County. However, the Court balances this concern with the length of Griggs' employment there, which was substantial (fifteen years), and the fact that the grant paid only fifty percent of Griggs' salary of $40,223.54. The Court considers Griggs' tenure as evidence that he would have likely corrected the funding issue, had he not been fired for discriminatory reasons. Thus, the Court finds that subtracting one year's salary due to physical incapacitation, and one year's salary due to lack of funding, from Griggs' requested relief of five years' salary, results in the most equitable remedy available. The resulting front pay award for three years' salary equals $120,670.62. Plaintiff's Motion is GRANTED, but not to the extent requested.

*Conclusion*

The Court finds the jury's verdict to be reasonable based on the evidence presented at trial. Thus, the Defendant's renewed Motion for Judgment as a Matter of Law is DENIED. Furthermore, the Court finds no evidence requiring a new trial, and Defendant's Motion for a

New Trial is also denied. Finally, Plaintiff's Motion to Alter or Amend the Judgment as to award Front Pay is GRANTED, but not to the extent requested.

SO ORDERED this the 3rd day of April, 2018.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE